UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANNE CATES, an individual, | |
| Plaintiff, | 03:05-CV-00696-LRH-RAM |
| v. | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF NEVADA, a political subdivision of the State of Nevada; DANA BILYEU, an individual; TINA LEISS, an individual; HOLLY ZIMMERMAN, an individual, | ORDER |
| Defendants. | |

Presently before the court is a Motion for Summary Judgment (# 45[1]) filed by Defendants Public Employees' Retirement System of Nevada, Dana Bilyeu, Tina Leiss, and Holly Zimmerman (collectively "PERS"). Plaintiff Anne Cates ("Plaintiff") has filed an opposition (# 48) to which Defendants replied (# 51).

**I.      Factual Background**

Viewing the evidence in the light most favorable to Plaintiff, the following narrative describes the facts of this case.

---

[1] Refers to the court's docket number.

1   PERS of Nevada is a political subdivision of the state. *See City of Reno v. Saibini*, 429 P.2d
2   559, 561 (Nev. 1967). Defendant Dana Bilyeu is the Executive Officer of PERS and Defendant
3   Tina Leiss is the Operations Officer of PERS. Defendant Holly Zimmerman was Plaintiff's
4   supervisor and the Director of Member and Retiree Services.
5   PERS employed Plaintiff for approximately fifteen years. Plaintiff held the position of
6   Retirement Examiner II at Grade 34 and Supervisor at all times relevant to this litigation.
7   During the relevant periods, PERS was undergoing reorganization, and its supervisors were
8   streamlining procedures and employee duties. (Dep. of Zimmerman (# 48), Ex. 5 at 10: 10-20.)
9   On July 28, 2004, Zimmerman evaluated Plaintiff's job performance. *See* (Dep't of Personnel
10  Employee Appraisal & Development Report ("Report # 1") (# 45) at Ex. 6.) Zimmerman indicated
11  on the report that Plaintiff "does not meet standards." *Id*. As a result, Plaintiff filed a grievance on
12  September 10, 2004. (Formal Grievance (# 48) at Ex. 1.) In accordance with protocol,
13  Zimmerman reevaluated Plaintiff on October 27, 2004. (Mot. for Summ. J. (# 45) at Ex. 7.)
14  Again, Zimmerman concluded Plaintiff's job performance was below standard. *Id.*
15  Attached to the second substandard evaluation, Plaintiff received a Notice of Employee
16  Rights During an Internal Investigation, which indicated Plaintiff was scheduled for questioning in
17  Zimmerman's office concerning the second evaluation. (Dep. of Cates (# 48), Ex. 2 at 120:19-21,
18  121:20-21; Notice of Employee Rights During an Internal Investigation (# 48) at Ex. 4.) It is
19  undisputed that Plaintiff's grievances were pending through January of 2005. *See* (Dep. of Cates (#
20  45), Ex. 4 at 101, 105, 106.) As a result of the two negative evaluations, Plaintiff did not receive
21  her longevity pay for the period ending December of 2004. *Id*. at 106:13-107:125.
22  In January of 2005, Plaintiff received information from her doctor indicating that she had
23  cancer. (Dep. of Cates (# 48), Ex. 2 at 35:3-8, 42:23-24.) As a result, Plaintiff took medical leave
24  and qualified leave pursuant to the Family Medical Leave Act of 1993. (Ans. (# 25) ¶ 8; Dep. of
25  Cates (# 45), Ex. 2 at 42:23-24.)
26

2

In March of 2005, while still on medical leave, Plaintiff consulted with her husband and decided she was going to leave PERS. *Id*. at 27: 15-20 and 33:25-34:8. In mid-April of 2005, Plaintiff returned to work and was reconsidering whether she wanted to stay at PERS. *Id*. at 43:2-6.

Plaintiff testified that upon her return to PERS in mid-April, Leiss, Zimmerman, and Bilyeu's body language towards her had changed. Specifically, Plaintiff stated that Leiss's language "abruptly changed when we would pass in the hall or when she would have conversations with me. It became guarded, awkward, stiff and she would avoid me at all costs." *Id.* at 38:9-13. Likewise, Bilyeu's body language also changed, it was "very guarded, very abrupt, very stiff." *Id.* at 38:24-25. Plaintiff further explained that the body language, along with "dirty" and "rigid" looks made it "obvious that [Plaintiff] was the last person they wanted to see." *Id.* at 109:23-110:10.

Plaintiff also found that "the job duties that distinguished [her] from other employees were no longer [her] job duties." *Id.* at 77:3-5. Plaintiff's original duties included answering customer calls, counseling members concerning their memberships, completing custom correspondence and email communications, and supervising lower level employees. *Id.* at 77:17-21. Plaintiff would also engage in public speaking programs. *Id.* at 80:24-81:11. After she returned, Plaintiff's duties were restricted to answering customer calls, counseling members, and "extremely limited supervision." *Id.* at 81:23-25. Also, Plaintiff was no longer completing custom correspondence and email communications to the extent she had prior to taking leave. *Id.* at 82:5-8.

As an example of her limited supervisory abilities, Plaintiff cited an incident when "[t]here was an evaluation of one of my employees which was my responsibility and [Zimmerman] didn't . . . ask my input at all. And up until that point, it was my responsibility to do those evaluations." *Id.* at 84:6-9. Moreover, Plaintiff referenced one time where "there were meetings called for managers, and [she] wasn't invited where the same level managers in other departments were and [she] was told to stay and answer the phones." *Id.* at 84:18-21.

3

Plaintiff applied for employment with other prospective employers from mid-March through May or June and was offered a job at the state department of taxation. She accepted the offer and resigned from PERS in June. Her final day at PERS was June 30, 2005, and she began employment for the state department of taxation the next day. *Id*. at 20:14-16. At PERS, Plaintiff was a grade 34; at the department of taxation, she was a grade 32. *Id.* at 26:1-10. She made the same amount of money with both employers (*Id.* at 26:18-21) and she continued with the same health insurance and benefits. *Id.* at 25:5-31:1.

**II.    Legal Standard**

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at 252.

**III.    Discussion**

Defendants seek summary judgment on all of Plaintiff's causes of action.  The court will address each cause of action and the parties' arguments below.

**A.  Tortious Constructive Discharge**

Plaintiff's first claim for relief alleges a state law claim of tortious constructive discharge.  Plaintiff cites to various actions PERS purportedly engaged in to support her claim.  PERS argues it is entitled to summary judgment on the ground Plaintiff has failed to present evidence to support the elements of her claim.

Generally, in Nevada, an employer can terminate an at-will employee with or without cause "so long as the dismissal does not offend a public policy."  *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989) (citation omitted).  If an employer terminates an employee, or causes an employee to resign, for reasons that violate public policy, the employee may bring an action for tortious discharge.  *Wayment v. Holmes*, 912 P.2d 816, 818 (Nev. 1996) (citation omitted).  To survive summary judgment, a plaintiff-employee must set forth evidence establishing that "(1) the employee's resignation was induced by actions and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied."  *Martin v. Sears, Roebuck & Co.*, 899

P.2d 551, 553 (Nev. 1995) (citation omitted).  The court addresses each element as follows:

### 1.     Filing Grievances as Strong Public Policy

PERS argues the facts "do not reflect a violation of public policy." (Mot. for Summ. J. (# 45) at 10.)  In response, Plaintiff contends Nevada has a "strong public policy for the advancement of grievances." (Opp'n to Mot. for Summ. J. (# 48) at 14.)  Nevada has not addressed the issue of whether it would consider filing workplace grievances as protected by public policy.  Due to the insufficiency of Plaintiff's evidence to support a constructive discharge claim as hereafter discussed, the court need not predict what the Nevada Supreme Court would hold with regard to this issue.

### 2.     Aggravated and Intolerable Employment Actions and Conditions

In support of Plaintiff's contention that PERS created an aggravated and intolerable environment, Plaintiff relies on her own deposition testimony that she was under stress daily.  (Dep. of Cates (# 48), Ex. 2 at 27:11, 134:21-25.)  This statement is insufficient to establish aggravated and insufferable employment actions and conditions.  *See Martin*, 899 P.2d at 553 (stating that for a viable claim, the actions the employer engaged in must be viewed objectively, for the question is whether a "reasonable person in the employee's position" would have also resigned under the circumstances").  The fact that Plaintiff experienced stress as a result of her employment is subjective and does not establish that PERS created conditions that were so intolerable that a reasonable person in Plaintiff's position would have also resigned.  *See id.*

Plaintiff next cites to her deposition testimony stating that she was informed that when Zimmerman learned of Plaintiff's health issues and need for surgery in January 2005, Zimmerman stated she did not care and also did not return Plaintiff's calls. (Dep. of Cates (# 48), Ex. 2 at 35:3-36:1.)  Based on the evidence submitted to the court, the "did not care" statement is inadmissible hearsay and cannot be considered by the court.  Fed. R. Evid. 801.  Further, that Zimmerman did not return Plaintiff's telephone calls is insufficient to show that Defendants were engaging in actions and creating conditions that were aggravated and insufferable.  *See Martin*, 899 P.2d at 553.

6

Plaintiff further asserts that she "took a demotion" and suffered "a break in service." (Dep. of Cates (# 45), Ex. 2 at 20:14-16; 25:16-23.) The "demotion" Plaintiff refers to is actually the result of her decision to transfer to the state department of taxation. *Id.* at 25:16-23, 27:15-17. And while Plaintiff testified she felt "forced" to search for an alternative position, *id.* at 27:11, PERS did not terminate her, nor did PERS present Plaintiff with an ultimatum of being terminated or taking a demotion. Rather, Plaintiff testified that it was her decision to seek alternative employment. (Dep. of Cates (# 45), Ex. 4 at 27:15-20.) The evidence is undisputed that it was Plaintiff who unilaterally decided to seek a transfer to other employment. Although she complains that she went a month without a paycheck at her new job, it appears that she was fully paid for the month she worked. These facts are insufficient to establish that Defendants engaged in aggravated and intolerable actions. *Cf., Dillard Dep't Stores, Inc*, 989 P.2d 882 (Nev. 1999); *Liston v. Las Vegas Metropolitan Police Dep't*, 908 P.2d 720 (Nev. 1995).

In order to establish PERS created aggravated and intolerable working conditions, Plaintiff points to testimony regarding Defendants' "body language" as evidence of adverse employment actions. (Dep. of Cates (# 48), Ex. 2 at 38:9-13, 38:24-25, 109:23-110:10.) Plaintiff's speculative perception of Defendants' body language is insufficient to support a claim for constructive discharge. "An employee's statements that are conjecture or speculation cannot support a claim of tortious discharge." *County of Clark*, 42 P.3d at 241; *see also Collins v. Union Fed. Savings & Loan*, 662 P.2d 610, 621 (Nev. 1983) ("[T]he opposing party is not entitled to build a case on the gossamer threads of whimsy, speculation, and conjecture."). Notably, in her deposition, Plaintiff could not recall a single conversation where Defendants stated they did not want Plaintiff to work at PERS. *Id.* at 38:17, 40:23-41-41:1, 41:13-42:1. The Nevada Supreme Court has held that "not only is the employee's unequivocal statement of outrageous behavior necessary, but the employee's statement must be supported by independent evidence." *Clark County*, 42 P.3d at 240. Plaintiff's assumption that Defendants' body language was intended to convey that "she was not wanted,"

7

1  (Opp'n for Mot. for Summ. J. (# 48) at 8), is not outrageous behavior. *See id.*

2  Plaintiff also references her own testimony stating upon her return from leave, her
3  supervisory duties were limited. (Dep. of Cates (# 48), Ex. 2 at 81:23-25, 118:5-11.) Plaintiff cites
4  to one instance where Defendant Zimmerman evaluated one of Plaintiff's employees, which,
5  traditionally, was Plaintiff's responsibility. (Dep. of Cates (# 48), Ex. 2 at 84:6-9.)  When
6  questioned about this incident, Plaintiff conceded her knowledge was based on hearsay and that it
7  was one of her staff members who told her Zimmerman did the evaluation. *Id.* at 89:18-21.
8  Plaintiff acknowledged that after Zimmerman purportedly completed this evaluation, Plaintiff was
9  able to evaluate her employees. *Id.* at 87:10-15. Therefore, Plaintiff has failed to set forth evidence
10 indicating her supervisory duties were "extremely limited."

11  Plaintiff asserts that her email and custom correspondence duties were also limited. (Dep.
12 of Cates (# 48), Ex. 2 at 82:5-8.) This reduction of email and custom correspondence duties did not
13 create aggravated and intolerable actions and conditions. *See Martin*, 899 P.2d at 553 (holding that
14 the second element of constructive discharge requires the plaintiff to show a reasonable person in
15 the plaintiff's position would have also resigned because of aggravated and intolerable employment
16 actions and conditions). Plaintiff does not present evidence indicating that these duties consumed a
17 majority of her time, or that, as a result of these duties being limited, Plaintiff's position at PERS
18 was intolerable. The court finds that a reasonable person would not have resigned under these
19 circumstances.

20  Likewise, while Plaintiff asserts that Defendants reassigned her duties in retirement
21 counseling while she was on her medical leave (Dep. of Cates (# 48), Ex. 2 at 115:4-116:13 and
22 118:5-11), the reassignment was due to Plaintiff's absence. Taken together, the reduction of duties
23 upon which Plaintiff relies does not constitute unbearable and intolerable conditions. Plaintiff did
24 not receive a reduction in pay nor did her job title change. Plaintiff has failed to present sufficient
25 evidence that would warrant an inference that a reasonable person in Plaintiff's position would have

26

8

also resigned because of the actions PERS engaged in and conditions PERS created. Moreover, Plaintiff has failed to show any significant efforts by her to challenge or question the changes in her duties over the two-month period leading to her resignation.

### 3. Discretionary Immunity

Even if this court had found Plaintiff satisfied all four elements of constructive tortious discharge, Defendants would be entitled to discretionary immunity pursuant to Nevada Revised Statute Section 41.032. Nevada Revised Statute Section 41.032 provides that no action may be brought against an immune contractor or an officer or employee of the state or any of its agencies or political subdivisions based on the exercise or performance of a discretionary function or duty, whether or not the discretion involved is abused. In *City of Reno v. Saibini*, 429 P.2d 559, 561 (Nev. 1967), the Nevada Supreme Court labeled PERS as a political subdivision via Chapter 286 of the Nevada Revised Statutes. In addition, the court has established that termination of an at-will employee is a "discretionary function." *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996). Thus, because Plaintiff is complaining of constructive termination, PERS meets the first element for discretionary immunity because the management decisions upon which Plaintiff claims she was constructively terminated all involve elements of individual judgment or choice. *See Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).

As an additional requirement before being entitled to discretionary-act immunity, Defendants' individual judgment or choice must be based on considerations of social, economic, or political activity. *Id.* Because the Nevada Supreme Court has held that there is a strong public policy for granting employers broad discretion in managing their offices, and the hiring and firing of employees is a large part of management, the Defendants' decisions before this court fall within the policy considerations of the second element of discretionary immunity. Therefore, summary judgment for Defendants as to Plaintiff's tortious discharge claim is also warranted on grounds of immunity.

### B. Family Medical Leave Act

Plaintiff's second cause of action against PERS sets forth allegations that Defendants violated the Family Medical Leave Act ("FMLA"). Specifically, Plaintiff alleges upon return from FMLA leave, Defendants interfered with her rights under the FMLA. (First Am. Compl. (# 14) ¶ 10, 13.) To prevail on a claim that a former employer violated the FMLA through interference, a plaintiff-employee must present evidence establishing that (1) the employee took protected leave, (2) the employer considered the leave as a negative factor in the employer's actions, and (3) the employer's adverse action was casually related to the employee's FMLA leave. *See Bachelder v. America West Airlines,* Inc., 259 F.3d 1112, 1124 (9th Cir. 2001); *see also Foraker v. Apollo Group, Inc.*, 427 F. Supp. 2d 936, 941 (D. Ariz. 2006).

As an initial matter, Defendants argue Plaintiff fails to create a genuine issue of material fact because all offered evidence "fails to show PERS engaged in adverse employment action motivated by Plaintiff's leave of absence." [2] (Mot. for Summ. J. (# 45) at 12.) In response, Plaintiff argues that "upon her return, her duties were completely taken away by Defendants, rendering her job meaningless." (Opp'n to Mot. for Summ. J. (# 48) at 12-13.)

"Adverse action" is defined as an action that tends to chill an employee's participation in protected activities. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002) (citation omitted); *see also Foraker v. Apollo Group, Inc.*, 427 F. Supp. 2d 936, 941 (D. Ariz. 2006). "[M]ere inconvenience[s] or an alteration of job responsibilities" will not qualify as adverse action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (holding that adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *Kocsis v. Multi-Care Mgmt, Inc.*, 97 F.3d 876, 887 (6th Cir. 1996) (holding that a demotion without change in

---

[2] It is undisputed that Plaintiff's leave was protected under the FMLA.

pay, benefits, duties, or prestige is insufficient to constitute an adverse employment action); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th Cir. 1994) (holding that a "bruised ego" is insufficient to constitute adverse employment action); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation").

While Plaintiff cites testimony that references several actions Defendants engaged in, as listed in Section III.A.2 of this order, Plaintiff fails to cite any evidence indicating a substantial change in employment status or job responsibilities upon her return. *See Burlington Indus., Inc.*, 524 U.S. at 761. As previously mentioned, the only evidence of actual change in position caused by Defendants was the reassignment of Plaintiff's responsibilities as certified retirement coordinator. (Dep. of Cates (# 48), Ex. 2 at 118:5-11.) This court finds that reassignment of these duties to another worker while Plaintiff was on leave constitutes an insignificant change in employment status. *See Sanchez,* 164 F.3d at 532.

Plaintiff does not present any evidence indicating that she received a decrease in salary, a change in benefits, or a less distinguishable title. She also does not show any significant efforts by her to meet with her supervisors to remedy or otherwise correct the actions of which she complains. At the time she left PERS, Plaintiff retained her position as a supervisor and remained at a Grade 34 classification. (Dep. of Cates (# 48), Ex. 2 at 26:18-21.) Plaintiff has failed to show that PERS materially changed her employment status. Accordingly, PERS's motion for summary judgment with respect to Plaintiff's FMLA claim is granted.

### C. 42 U.S.C. § 1983 First Amendment Rights Claim

Plaintiff's complaint asserts a cause of action pursuant to 42 U.S.C. § 1983 for an alleged infringement of her First Amendment rights. If Plaintiff was able to show a constructive discharge,

11

she still would not have been able to show a § 1983 violation of her First Amendment rights.

In order to succeed on a claim that her First Amendment rights were violated, Plaintiff must show "(1) that [she] engaged in conduct protected by the First Amendment, and (2) that this constitutionally protected conduct was a motivating factor in the adverse actions taken against [her]." *Allen v. Iranon*, 283 F.3d 1070, 1076 (9th Cir. 2002) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

By accepting government employment, an employee does not forfeit protections under the First Amendment when commenting on matters of public concern. *Connick v. Myers*, 461 U.S. 138, 140 (1983) (citation omitted). The Supreme Court has expressly stated that employee expression is protected only to the extent it relates to matters of political, social, or other concern to the community. *Id.* at 146. Even where the government employer's dismissal of the employee may not be fair, "ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." *Id.* at 147 (citations omitted). Speech concerning private employee matters, not of public concern, which, instead, further the employee's personal interests, are not appropriately presented to the federal court system. *Id.*

Plaintiff argues the First Amendment protects her grievances concerning her performance evaluations and the notice she received of internal investigation. (Opp'n to Mot. for Summ. J. (# 48) at 6.) The Supreme Court, however, rejected such a First Amendment claim in *Connick v. Myers*. In *Connick,* a deputy district attorney verbally objected to being transferred to another section by handing out a questionnaire soliciting the views of coworkers about internal office procedures. *Connick*, 461 U.S. at 140-141. The Court repudiated the plaintiff's argument that her speech was protected by the First Amendment, stating, "it would indeed be a Pyrrich victory for the great principles of free expression if the Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs were confused with the attempt to

12

constitutionalize the employee *grievance* that we see presented here." *Id.* at 154 (emphasis added); *see also Havekost v. United States Dep't of the Navy*, 925 F.2d 316, 318 (9th Cir. 1991) (holding that, in conformity with the principle stated in *Connick*, where the plaintiff's speech consists of "nothing more than a workplace grievance" the employee is not entitled to protection under the First Amendment). Thus, internal workplace grievances are not protected speech.

While Plaintiff argues her grievances assert "official mismanagement," Plaintiff does not present any evidence to suggest that the content, form, and context of her grievances are matters of public concern. Rather Plaintiff's own testimony indicates that her grievances were filed in order to further her own interest. Plaintiff stated in her deposition that the point of the meeting with Zimmerman was so that the negative evaluations would not be part of Plaintiff's personnel file, to facilitate her transfer to other employment, and to "see how receptive [Zimmerman] was to [Plaintiff] staying" at PERS. (Dep. of Cates (# 48), Ex. 2 at 100:10-16.) Furthermore, the content of the grievance Plaintiff attached to her opposition does not contain any statements about mismanagement by Defendants. (*See* Formal Grievance (# 48) at Ex. 1.) Such speech deals with personal matters, and the information would be of no relevance to the public's evaluation of PERS's performance. *See Havekost*, 925 F.2d at 318 (stating that "speech of public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies"). Thus, because Plaintiff's speech is not protected under the First Amendment, this court will grant Defendants' motion for summary judgment as to Plaintiff's § 1983 claim.

///
///
///
///

1    IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (# 45), is
2 hereby GRANTED.
3    The clerk is directed to enter judgment accordingly.
4    IT IS SO ORDERED.
5    DATED this 27th day of March, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE